IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS,

BROWNSVILLE DIVISION

| | |
|---|---|
| **A-PRO TOWING AND RECOVERY, LLC, EDUARDO PENA**<br><br>*Plaintiffs*,<br><br>vs.<br><br>**CITY OF PORT ISABEL, MARTIN CANTU SR.,**<br><br>*Defendants*. | **CIVIL ACTION NO. 1:19-cv-00016**<br><br>**Jury Requested** |

### PLAINTIFFS A-PRO TOWING & RECOVERY, LLC & EDWARD PENA'S 1ST AMENDED COMPLAINT

To the Honorable Judge of Said Court:

Come now Plaintiffs, A-Pro Towing and Recovery, LLC, and Eduardo Pena who make and file this First Amended Complaint against Defendant, Martin Cantu Sr., and in support thereof will respectfully show the following:

### I.   Parties

1. Plaintiff, A-Pro Towing and Recovery, LLC, is a limited liability corporation registered and operating in the State of Texas, who may be contacted through its undersigned counsel of record.

2. Plaintiff, Eduardo Pena, is an individual residing in the City of South Padre Island, Texas, who may be contacted through his undersigned counsel of record.

3. Defendant, Martin Cantu Sr., is a duly elected Commissioner of the City of Port Isabel, Texas who may be served with service of process through his attorneys of record, J. Arnold Aguilar or Fransisco J. Zabarte at Aguilar-Zabarte, LLC 990 Marine Dr. Brownsville, TX 78520.

## II.   Venue, Jurisdiction and Conditions Precedent

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because part of the case asserts claims under 42 U.S.C. § 1983, and therefore arises under federal law.

5. Venue is proper in the Court pursuant to 28 U.S.C. § 1391(b) because the events giving rise to these claims all occurred in the Southern District of Texas.

6. The Plaintiffs affirmatively aver that all condition precedents to filing this suit have taken place, or else have been waived.

## III.   Statement of Facts/Actionable Conduct

7. Plaintiff, A-Pro Towing and Recovery, LLC, (hereafter "A-Pro") is a limited liability company managed by Plaintiff Eduardo Pena (hereafter "Pena"). A-Pro provides towing services to the City of Port Isabel (hereafter "PI") as well as other cities in the surrounding area.

8. Plaintiff Pena is a permanent resident of South Padre Island and an active member of the community. Pena's chosen full time occupation is towing, which he does by managing A-Pro. As A-Pro's manager, Pena focuses on the operations, expanding the business, maximizing efficiencies and ensuring that A-Pro provides quality service.

9. Defendant Martin Cantu Sr. (hereafter "Cantu") has occupied the position of City Commissioner with Port Isabel for a number of years. Over his time in office, Cantu has made many connections and gained a considerable amount of influence due to his position. Additionally, Cantu owns, has owned or effectively controls six towing companies, three of which are owned by him and three are owned by close family members:

a. Cantu's Auto Repair and Wrecker Service owned by Cantu, listed at mailing address: P.O. Box 13071 Port Isabel, TX 78578, street address: 106 Jackson St. Port Isabel, TX 78578, telephone number: 210-495-0074, as of 2013. Despite being listed on the tow rotation call log no recent permits were provided as per Joanna Pena's October 30, 2018 Public Information Act request. **EXHIBIT ONE: October 30, 2018 Public Information Act Request, EXHIBIT EIGHT: 2016-2018 P.I.P.D. Wrecker Log, EXHIBIT TWO: Cantu's Wrecker Permits**;

b. City Towing owned by Cantu, listed at mailing address: P.O. Box 816 Port Isabel, TX 78578, street address: 1805 N. Shore Dr., Port Isabel, TX 78578, telephone number: 210-495-0178, as of 2017. **EXHIBIT THREE: City Towing Permits**;

c. M. Cantu Towing owned by Cantu, listed at mailing address: P.O. Box 816 Port Isabel, TX 78578, street address: 1805 N. Shore Dr., Port Isabel, TX 78578, telephone number: 210-495-0178, as of 2017. **EXHIBIT FOUR: M. Cantu Towing Permits**;

d. Cantu's Wrecker Service allegedly owned by Cantu's brother Merced Cantu, listed at mailing address: PO Box 816 Port Isabel, TX 78578, street address: 206 Jackson St. Port Isabel, TX 78578, telephone number 210-495-0178, as of 2017. **EXHIBIT FIVE: Cantu's Wrecker Service Permits**;

e. A-Pro Island Beach Towing allegedly owned by Cantu's mother, Maria Del Pilar Cantu, and listed at mailing address: P.O. Box 816 Port Isabel, TX 78578, street address: "Cantu's Wrecker Service Lot", Port Isabel, TX 78578, telephone number: 210-495-0178, as of 2017. **EXHIBIT SIX: A-Pro Wrecker Permits (Cantu)**.

f.  Bay City Towing allegedly owned by Martin Cantu Jr., listed at mailing address: P.O. Box 816 Port Isabel, TX 78578, street address: P.O. Box 13494, TX 78578, telephone number 210-495-0178, as of 2016. **EXHIBIT SEVEN: Bay City Wrecker Permits**.

10. As of 2017, two of Cantu's wrecker companies held the same mailing address, physical address, and phone number, yet claimed to be different entities. Additionally, each wrecker company held by Cantu or one of his family members has used the P.O. Box 816 Port Isabel, TX 78578 mailing address, and the 210-495-0178 phone number, the only exception being the first above listed company. Through reason and belief, there is no practical difference between each of the separate declared entities. Each is a mere corporate veil for the single company that Cantu controls.

11. In 2015, Pena, decided to open a new towing company in Port Isabel. After two failed attempt to engage in business with Cantu, A-Pro acquired Paradise Towing at 1515 Padre Blvd. South Padre Island, TX 78597 formally owned by Chad Hart. **EXHIBIT NINE: Letter to South Padre Island Police Chief.** By 2016 A-Pro was ready to break into the PI market.

12. In order to break into PI's market A-Pro needed to be added to the Port Isabel Police Department Tow Rotation List (hereafter the "List"). While A-Pro already provided roadside assistance to several insurance companies, several auto motive agencies, South Padre Island's Metro Bus, and to private requests, a substantial part of A-Pro's anticipated revenue was to come from being added to the List. As A-Pro's manager, it was Pena's job to see that the PI Police Department added A-Pro to the List. Pena was aware of the amount of revenue that the List had the potential to provide because A-Pro was already on police rotation lists with the Texas

Department of Public Safety, Cameron County Sheriff Department, and Cameron County Park Police. **Id.**

13. The PI Police Department operates the List by assigning a single permitted towing company to a single day in a rotation. When a vehicle needs to be towed, but the owner either has no preference as to who tows it, or is unable to express a preference (say, after a collision, or arrest, or because the owner is not around), the police or other city authorities call the towing company whose "day" it is, based on the List.

14. As Cantu owns multiple companies, his businesses are called on multiple days. **EXHIBIT TEN: 2016 Tow Rotation List.** Cantu's companies occupy different days despite two of his companies having the same physical location, mailing address and phone number and others sharing the same mailing address and phone number, as per the list above. **Id.** Threatened by the new competition, Cantu began to flex his political muscle by using his influence and connections as City Commissioner to protect his local monopoly.

15. On May 27, 2016, A-Pro submitted its initial application, with all certificates required, to be on the List. **EXHIBIT ELEVEN: Initial Application for Police Rotation.** On June 8, 2016, Port Isabel's former Police Chief Gualberto Gonzalez's (hereafter "Gonzalez") denied A-Pro's request to be added to the List. **EXHIBIT TWELVE: June 8, 2016 Denial Letter.** Gonzalez denied A-Pro supposedly because A-Pro had the same name as another tow company on the list, "A-Pro Cantu's Wrecker" as listed. **EXHIBIT TEN: 2016 Tow Rotation List.** The "A-Pro" already on the List "owned" by Cantu's mother is listed as A-Pro Island Beach Towing on its wrecker permits. **EXHIBIT SIX: A-Pro Wrecker Permits (Cantu)**. Gonzalez contended that having two names so similar on the List would cause confusion. **EXHIBIT TWELVE: June 8, 2016 Denial Letter.**

16. Pena responded to the denial that same day, arguing that A-Pro's name is A-Pro Towing & Recovery, not A-Pro Wrecker. **EXHIBIT THIRTEEN: June 8, 2016 Response Letter.** Pena also pointed out that the "A-Pro" already on the List is A-Pro Island Beach Towing, which is substantially different than "A-Pro Wrecker" as Gonzalez had stated. **Id.** Unfortunately, Pena's letter proved to be an exercise in futility as no further response or justification for the denial was provided.

17. In an effort to get A-Pro's new location going, Pena conceded and created Isla Towing, LLC, (still referred to hereafter as "A-Pro"). Pena then resubmitted the application to be on the List. **EXHIBIT FOURTEEN: Second Application for Police Rotation.** On June 29, 2016, Port Isabel approved A-Pro to be on the List. **EXHIBIT FIFTEEN: June 29, 2016 Approval Letter.** Given that A-Pro Island Beach Towing was allowed on the List even though it was inconsistently listed as "A-Pro Cantu's Wrecker," and that no justification was given for the arbitrary logic that "A-Pro" was confusing, but "Isla" was not, through reason and belief Pena suspected that Cantu had used his influence as a government official to block A-Pro from being added to the List.

18. Pena had also faced and expressed a similar frustration while attempting to get his wrecker permit in South Padre Island when Cantu had attempted to stone wall A-Pro there as well. **EXHIBIT NINE: Letter to South Padre Island Police Chief.** Fortunately, Cantu's influence in South Padre Island is not as strong and A-Pro has been able to operate there successfully.

19. Once on the list, A-Pro had one day per week assigned on the List, while Cantu's businesses had five days based on the presumption that the five towing businesses were actually separate entities owned by five separate individuals or entities. Pena would have accepted this

rotation as fair, except Cantu, through the actions of Port Isabel Police Chief, Robert Lopez (hereafter "Chief Lopez"), prevented A-Pro from receiving calls and thus business.

20. Again using his influence as a City Commissioner, Cantu ordered Chief Lopez, who then ordered his officers and dispatchers, to avoid calling A-Pro during its day on the List. Rather, Chief Lopez instructed the department's officers to discard standard practice and instead use their cell phones to call one of Cantu's companies directly during A-Pro's rotation day. Cantu's orders, which were followed by a number of Port Isabel employees, violated the List's rotation and deprived A-Pro of business. On A-Pro's days, there were almost no tow calls from dispatch. **EXHIBIT EIGHT: 2016-2018 P.I.P.D. Wrecker Log.** Because the Police Department did not contact A-Pro on its designated day, it was deprived of revenue and Pena was prevented from running A-Pro effectively.

21. On August 2, 2017, Pena wrote Port Isabel's attorney, Gilbert Hinojosa (hereafter "Hinojosa"), in regard to an A-Pro wrecker that Pena sought to have permitted for use in Port Isabel. **EXHIBIT SIXTEEN: August 2, 2017 Letter to Hinojosa.** Specifically, Pena complained that Chief Lopez, obstructed the permit for transparently fictitious reasons (i.e. because the wrecker had "A-Pro" on the mud flaps). **EXHIBIT SEVENTEEN: August 16, 2017 Text to Lopez.** Lopez demanded that the wrecker's flaps only say "Isla Towing". **Id.** Chief Lopez arbitrarily blocked A-Pro's wrecker from being permitted, despite allowing Cantu's ordinance-violating wreckers to retain their permits. **EXHIBIT EIGHTEEN: July 14, 2017 Complaints, EXHIBIT NINETEEN: 2017 Permits.** Chief Lopez's reason for not permitting A-Pro's wrecker combined with PI's arbitrary enforcement of wrecker ordinances again lead Pena to suspect that Cantu had used his influence as a City Commissioner to monopolize the local towing industry.

22.     In addition to suppressing A-Pro's business by blocking permits and abuse of the List, Port Isabel employees (under instruction from Cantu and Chief Lopez) furthered the campaign to protect Cantu's monopoly by issuing bogus code compliance violations against A-Pro. **EXHIBIT TWENTY: Complaints Against Plaintiffs.** Rather than succeeding in the competitive free market, Cantu instead used his political sway to harass and intimidate Pena and A-Pro employees.

23.     Further, Cantu instructed Port Isabel Chief Code Enforcement Officer John Sandoval (hereafter "Sandoval") to also perpetuate this campaign. Sandoval sent his enforcement officer, Oscar Del Abra (hereafter "Del Abra"), to the A-Pro's impound lot in search of a code violations. On two separate occasions, Del Abra arrived at A-Pro's impound lot allegedly because of dog barking.  No canines were found.

24.     Del Abra's first entry on A-Pro's lot occurred on May 27, 2018. **EXHIBIT TWENTYONE: May 27, 2018 Report.** Del Abra arrived at A-Pro's lot around noon <u>without a warrant</u>. **Id.** Yet, the lack of a warrant did not deter Del Abra from entering A-Pro's enclosed private property. Within, Del Abra ran into Chief Deputy Constable Saul Sauceda (hereafter "Sauceda"), who rented a trailer on A-Pro's property. Not expecting to see Sauceda, Del Abra immediately turned around in an attempt to escape. When Sauceda confronted the City's Code Enforcement Officer, he questioned why Del Abra was there at all; Del Abra cited the canine noise. Again, there was no dog or dog sound in the area.

25.     On August 31, 2018, Chief Code Enforcement Officer Sandoval again sent Del Abra to A-Pro's lot. Again the official report says that Del Abra was there for an animal call. **EXHIBIT TWENTYTWO: August 31, 2018 Report.** However, Del Abra was also there to allegedly deliver a letter, also mentioned in the report. **Id.** When Del Abra arrived at A-Pro's lot,

Del Abra again walked onto A-Pro's enclosed and private property without any warrant, writ or other official permission to enter and look through the gate. Del Abra then called Port Isabel police officer, Jerry Lopez (hereafter J. Lopez), to A-Pro's lot. **Id.** Upon arrival, J. Lopez and Del Abra opened a closed gate, reentered the property and headed straight to Sauceda's trailer, still without a warrant. Again, Del Abra unexpectedly encountered Sauceda. Del Abra claimed he was there to cite Sauceda's trailer as a violation of commercial zoning. Del Abra then hand-delivered an unsigned letter from Sandoval concerning the alleged code violation. **Id.** The letter was marked as delivered by certified mail, despite Del Abra unnecessarily hand delivering the letter to A-Pro's property. **Id.**

26. The Code Enforcement Department's repeated visits to A-Pro's property seemed designed to further intimidate Pena and/or be a means to fish for some sort of code violation for which Pena could be penalized.

27. Tensions continued to increase in late 2018, as Cantu further utilized Port Isabel officers to protect his personal tow monopoly, and satisfy his vendetta against A-Pro for providing an alternative tow service outside the monopoly.

28. On September 16, 2018, the O'Reilly Auto Parts, located in Port Isabel, contacted A-Pro about towing an abandoned gold 2003 Nissan Altima. **EXHIBIT TWENTYTHREE: September 16, 2018 Invoice.** A-Pro removed the vehicle as per the request. **Id.** Yet, on September 18, 2018, the O'Reilly's manager, Rick Martinez (here after Martinez), called A-Pro to demand that A-Pro return the vehicle, claiming there had been a mistake. A-Pro returned the vehicle free of charge.

29. Additionally, Martinez asked A-Pro to remove its tow sign from the O'Reilly Auto Parts parking lot. As Pena then learned, Cantu visited O'Reilly Auto Parts after that initial tow to

speak with Martinez. Cantu told Martinez that A-Pro operated illegally, and that Martinez instead needed to use Cantu's business, and that if Martinez did not, there would be legal complications. Cantu even went as far as contacting Chief Lopez to corroborate that A-Pro operated illegally and O'Reilly Auto Parts was required to use Cantu's business.

30. The apex of Port Isabel's corrupt behavior, under the direction of City Commissioner Cantu, occurred after Chief Deputy Sauceda (A-Pro's tenant) repeatedly challenged city officials, including the Code Enforcement Chief Sandoval, Port Isabel City Manager Jared Hockema, and Police Chief Lopez, about the coordinated harassment campaign against A-Pro.

31. On November 5, 2018, Port Isabel police arrested Pena under an invalid arrest warrant and held him for an entire day without the approval of a magistrate judge.

32. Initially, Port Isabel Police Department officer J. Lopez, the same officer who also trespassed on Pena's property without a warrant, stopped Pena allegedly for speeding, though he quickly allowed Pena to drive off.

33. Several minutes later, Officer J. Lopez stopped Pena a second time, without probable cause, and placed Pena under arrest with the assistance of <u>five</u> Port Isabel officers.

34. J. Lopez justified the arrest to Pena for two supposedly outstanding warrants, one from The City of Los Fresnos, and the second from The City of Port Isabel concerning an alleged code violation (class C misdemeanor) from two years prior.

35. The alleged violation was for trash on A-Pro's impound lot. **EXHIBIT TWENTYFOUR: August 18, 2017 Trash Ticket, EXHIBIT TWENTYFIVE: Photo of Trash.** <u>Yet no notice was ever sent to Plaintiffs regarding the alleged code violation</u>. Additionally, the ticket did not contain Pena's signature acknowledging the proposed court date. **EXHIBIT**

**TWENTYFOUR: August 18, 2017 Trash Ticket.** Indeed, PI never issued an arrest warrant on Pena for the alleged class C misdemeanor, or for his alleged failure to appear.

36.     Once arrested, the officers threw Pena in jail until 9:00 PM that day. While in jail, PI Sargent Jose Luis Cadengo (hereafter "Cadengo") did not process Pena as was required for all arrested individuals. Nor did Cadengo allow Pena a phone call. Cadengo told Pena that his paper work could take up to 48 hours, and that Pena could not be released until it was all complete.

37.     When Pena's wife, Joanna Pena (hereafter "Mrs. Pena"), inquired about her husband, PI Police Officer Omar Olguin (hereafter "Olguin") refused to provide her with any information about her husband. The only information Olguin provided was that her husband would not be released until the following day due (allegedly) to the judge's unavailability, although the municipal court judge was scheduled to preside that day. Olguin also refused to let Mrs. Pena pay her husband's civil fine to permit Pena's release.

38.     When Port Isabel Magistrate Helen Delgadillo (hereafter the "Delgadillo") noticed that Pena was sitting in jail under an unsigned warrant and without being processed she demanded his immediate release.

39.     Finally and perhaps most egregious, Delgadillo's demand was met with the Police Department's excuses of having inadequate man-power to process Pena's paper work. The Police Department did seemingly have enough man-power, however, to spare five officers to arrest Pena over an old trash violation.

40.     Delgadillo repeatedly demanded from the court's bailiff, from Chief Lopez, and others in the Police Department that they produce Pena in her court. Eventually, the police did bring Pena to court, upon which Delgadillo immediately ordered his release. No charges were ever brought against Pena.

41. On November 18, 2018, a customer, Hugo Cardenas (hereafter "Cardenas"), called A-Pro to pick up his 1994 Ford Aspire, which broke down. **EXHIBIT TWENTYSIX: Texts from Cardenas.** When an A-Pro employee, George Frye (hereafter "Frye"), arrived, A-Pro was forced to tell Cardenas that Frye would not be able to take the vehicle because PI officers were already there and would not let Frye near the vehicle. **Id.** PI Officer, Rene Camacho (hereafter "Camacho"), informed Frye that Cantu's Wrecker, would be picking up the vehicle. Frye showed Camacho the text from Cardenas authorizing Frye to take the vehicle. Camacho responded that he did not care, and if Frye did not leave Camacho would arrest him.

42. Cantu's monopoly over the local towing industry continues to the present. Though Pena and the businesses he runs with his wife succeed in all surrounding towns, they struggle in Port Isabel, as Pena is frightened to step foot within Port Isabel, while A-Pro cannot: attract businesses to hire it to monitor their parking lots; guarantee a private caller that the police will allow A-Pro to tow a vehicle; and/or receive business from the Police Department's List.

## IV.    Causes of Action

First Cause of Action:

Violation of Constitutional Right to Substantive Due Process

43. The facts set forth above state a cause of action in favor of the Plaintiffs and against the Defendant for a violation of United States Constitution actionable under to 42 U.S.C. §1983. Specifically, the Defendant's acts, done under color of law, deprived the Plaintiffs of rights, privileges or immunities secured by the federal Constitution and laws. The Defendant's misuse of power was possible only because he was clothed with the authority of the City of Port Isabel and thus, his actions in violating the Plaintiffs' constitutional rights were done under color of law.

44. The Defendant violated the Plaintiffs' substantive due process rights under the Fourteenth Amendment by preventing Pena from pursuing his chosen occupation in towing, and specifically managing and operating the a towing business A-Pro. It is well established that the right to pursue private employment is a protected interest under the substantive due process clause of the Fourteenth Amendment. "Liberty" under the due process clause includes "the right of the individual to engage in any of the common occupations of life." Defendant Cantu used his office to violate Pena's substantive due process rights under the Fourteenth Amendment by harassing Pena in his endeavor to be added to the List, ordering Chief Lopez and in turn the officers of Port Isabel to undermine the rotation of the List, ordering officers, again through Chief Lopez, to arbitrarily enforce wrecker ordinances related to maintaining a wrecker permit, ordering Chief Sandoval to have his enforcement officer arbitrarily target A-Pro for code violations, and generally using his influence as a City Commissioner to create an atmosphere of hostility designed to stifle A-Pro's natural growth as a business and intimidate Pena out of the Port Isabel market. Cantu's actions have caused a long-term and serious disruption in Pena's ability to pursue his chosen profession of managing and operating the tow truck business owned by his wife, A-Pro.

Second Cause of Action:

Violation of Constitutional Right to Procedural Due Process

45. Plaintiffs also bring a Section 1983 claim for a violation of Plaintiffs' procedural due process rights under the Fourteenth Amendment by depriving Plaintiffs of protected liberty interest without due process of law. Pena has a liberty interest in pursuing his chosen occupation of towing, specifically the management of A-Pro. The Fourteenth Amendment to the United States Constitution provides that no State shall deprive any person of life, liberty, or property without due process of law. Once a protected interest is established, an individual cannot be

constitutionally deprived of that right without procedural safeguards. Defendant Cantu used his office to violate Pena's procedural due process rights under the Fourteenth Amendment by harassing Pena in his endeavor to be added to the List, ordering Chief Lopez and in turn the officers of Port Isabel to undermine the rotation of the List, ordering officers, again through Chief Lopez, to arbitrarily enforce wrecker ordinances related to maintaining a wrecker permit, ordering Chief Sandoval to have his enforcement officer arbitrarily target A-Pro for code violations, and generally using his influence as a City Commissioner to create an atmosphere of hostility designed to stifle A-Pro's natural growth as a business and intimidate Pena out of the Port Isabel market. Cantu's actions have caused a long-term and serious disruption in Pena's ability to pursue his chosen profession of managing and operating the tow truck business owned by his wife, A-Pro.

Third Cause of Action:

Violation of Constitutional Right to Equal Protection

46. The facts set forth above also state a cause of action under Section 1983 for a violation of Plaintiffs' right to equal protection under the Fourteenth Amendment.

47. The Equal Protection Clause of the Fourteenth Amendment directs States to treat "all persons similarly situated" alike. The Equal Protection Clause is violated by intentional discrimination, which implies that the decision-maker singled out a particular group for disparate treatment and selected his course of action, at least in part, for the purpose of causing an adverse effect on an identifiable group. A governmental defendant violates the Equal Protection Clause when its action classifies or distinguishes between two or more relevant persons or groups. An equal protection claim may be brought by a "class of one," where Plaintiff alleges that they have been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.

48. This is a class of one case where Pena and his business, A-Pro, have been treated differently than a similarly situated individual, Cantu, and similarly situated tow companies owned or controlled by Cantu for a discriminatory purpose. Cantu has misused his position and influence as City Commissioner to treat Pena and A-Pro differently than the other tow companies for no rational reason. This is not a case where Pena is claiming his rights have been violated for not being put on the List or by being removed from the List. Instead, Pena claims his right to equal protection is being violated because he is being treated differently than Cantu, while his companies are treated differently than Cantu's tow companies due to Cantu's discriminatory intent, actions and influence as City Commissioner that are geared towards furthering his monopoly.

49. Specific instances where Pena and or A Pro have been treated differently than similarly situated business are:

   a. requiring A-Pro's registered name to strictly match on the List, and be changed to supposedly avoid confusion, when Cantu's company names did not match their register names did not match the List, else A-Pro would not be added;

   b. undermining the standard practice of using dispatch to contact tow companies on their designated day and instead using cell phones to directly call one of Cantu's wreckers;

   c. strictly enforcing supposed wrecker ordinance violations on A-Pro's wreckers while leniently or entirely not enforcing ordinance violations on Cantu's or Cantu's family's wreckers;

   d. instructing Chief Sandoval to send his enforcement officer to A-Pro's property on multiple occasions, without cause, to look for code violations or intimidate Pena or A-Pro employees;

  e. instructing officers to turn away A-Pro's wreckers in favor of Cantu of Cantu family wreckers;

  f. arresting Pena without cause; and

  g. generally targeting Pena and A-Pros employees for harassment.

Fourth Cause of Action:

Claim Under the Sherman Act

50. The facts set forth above also state a cause of action under the Sherman Act for an attempted monopoly of the towing business in Port Isabel. The towing business has an effect on interstate commerce because vehicles traveling in interstate commerce are towed from the highways running through Port Isabel.

51. With the application of the Sherman Act, it is unlawful for any person or firm to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States." 15 U.S.C. § 2.

52. Cantu's predatory business practices and monopoly have affected interstate commerce because PI is a vacation destination that experiences a huge influx of tourists traveling to visit Port Isabel every year.

53. Cantu, using the apparatus of Port Isabel's law enforcement capabilities has attempted to monopolize the towing business by engaging in predatory or exclusionary conduct, as shown above, with the specific intent to monopolize.

54. Further, there is a dangerous probability that Cantu will succeed in his attempt due to his influence and connections.

55. A-Pro and Pena have suffered significant damages, and A-Pro will likely be put out of business if Defendant is not stopped.

## V.     Qualified Immunity

56. Defendant is not entitled to qualified immunity under federal law. A reasonable city official would know that he cannot use his authority and influence over other city employees to repeatedly harass and intimidate an individual in order to drive him out of business. Cantu knew or should have known that he was violating Plaintiffs' right to substantive and procedural due process and equal protection rights, all while violating the Sherman Act's prohibition of the monopolization of any industry.

57. Defendant is not entitled to qualified immunity for Plaintiffs' state law claim because he cannot demonstrate that he acted in good faith when he interfered with Plaintiffs' prospective business relationships. A reasonable official under the same circumstances could not have believed that the directives made by Cantu regarding Plaintiffs were justified based on the information they possessed when the directives were made. Further, Defendant Cantu did not act in the scope of his authority in making directives against the Plaintiffs, although they were made under color of law, because Cantu misused his position and authority as a city official.

## VI. Damages

58. Plaintiffs hereby allege their individual damages consist of an excess of $1,000,000 in loss of business due to Pena and A-Pro facing discrimination from Cantu and his efforts to monopolize the towing industry within Port Isabel. These damages are within the jurisdictional limits of this court.

59. Plaintiffs hereby specifically plead for recovery of their reasonable and necessary attorney's fees and costs, pursuant to 42 U.S.C. § 1988.

60. Finally, Plaintiffs allege that the actions of the Defendant were intentional and malicious such that exemplary damages are warranted and hereby sought to the maximum amount allowed by law.

Plaintiffs pray the Defendant be cited to appear and answer herein and upon final trial, Plaintiffs have judgment against these Defendant for their actual damages, exemplary damages as allowed by law, pre- and post-judgment interest as allowed by law, their reasonable and necessary attorney's fees and costs of court.

Plaintiffs pray for such other and further relief at law or in equity to which they may show themselves to be justly entitled.

Respectfully submitted,

**THE GOLDBERG LAW OFFICE, PLLC**

*/s/ Daniel J Goldberg*
Daniel Goldberg
Federal Bar No.: 866400
TBN: 24052856
2006 Commonwealth Street
Houston, Texas 77006
P: 713-942-0600
F: 713-942-0601
DJG@LawGoldberg.com

**STAPLETON & STAPLETON, PC**
Ed Stapleton
S.D. Tex. ID. No. 1501
TBN: 19058400
2401 Wildflower drive, Suite C
Brownsville, Texas 78526
P: 956-504-0992
F: 956-504-0814
Stapletonstapleton@icloud.com

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of this Plaintiffs' 1st Amended Complaint was served on the above-named Defendant, Martin Cantu Sr., by and through Defendant's attorneys of record, J Arnold Aguilar and Francisco J. Zabarte, 990 Marine Dr. Brownsville, Texas 78520, via electronic filing through Pacer, on this the 20th of Septenber, 2019.

*/s/ Daniel J Goldberg*
Daniel Goldberg
